**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |
|---|
| In re: |
| NEW DRAGON TOY WHOLESALE, INC. |
| Debtor. |

**FOR PUBLICATION**

Case No. 24-10653 (MG)

**MEMORANDUM OPINION AND ORDER**
**DENYING TEMPORARY RESTRAINING ORDER**

*A P P E A R A N C E S:*

SHI & ASSOCIATES
*Attorney to the Debtor*
401 Broadway
Suite 409
New York, NY 10013
By:    Edward Miller, Esq.

ROSENBLUM & BIANCO, LLP
*Attorney to the Landlord*
100 Merrick Road
Suite 306-E
Rockville Centre, NY 11570
By:    Matthew Stuart Livits, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Section 362(a) of the Bankruptcy Code imposes an automatic stay on substantially all

actions and proceedings against a debtor or a debtor's estate upon the debtor's filing of a

bankruptcy petition.  *See* 11 U.S.C. § 362(a); *In re Project Orange Assocs., LLC*, 432 B.R. 89,

101 (Bankr. S.D.N.Y. 2010).  The coverage provided by the automatic stay is broad, but not

limitless.  Section 362(b) provides several statutory exemptions to the automatic stay, which

allow certain actions to proceed against the debtor and its property.  11 U.S.C. § 362(b).

Importantly, section 362(b)(10) allows lessors to maintain actions against debtor-tenants despite the automatic stay if the underlying nonresidential lease has terminated before the commencement of a bankruptcy case.  11 U.S.C. § 362(b)(10).  It is axiomatic that the automatic stay does not protect property that is not part of the debtor's estate.  The lease at issue here was terminated before New Dragon Toy Wholesale, Inc. (the "Debtor") filed its bankruptcy petition, and, therefore, the Debtor has no interest that can be protected by the automatic stay.

On April 17, 2024, the Debtor filed a motion for a Temporary Restraining Order (the "TRO Motion," ECF Doc. # 2).  The Debtor submitted two declarations in support of the TRO Motion: (1) Declaration of Bo Shi, Esq. (the "Shi Decl.," ECF Doc. #2-1); and (2) Declaration of Khim Bun Mak (ECF Doc. #2-2).  The factual background, relief requested, and the Debtor's legal arguments are all contained in the Shi Decl.

The Court entered an Order to Show Cause, setting the deadline to file answering papers for April 22, 2024, and setting a hearing date for April 24, 2024 (the "Hearing").[1]  (ECF Doc. #8.)  Nomad West 27th Street LLC (the "Landlord") filed a timely Affirmation in Opposition (the "Landlord Opposition," ECF Doc. #12) to the Order to Show Cause.

For the reasons explained below, the Court **DENIES** the relief requested in the TRO Motion and allows the Landlord to execute the eviction warrant.

## I.    BACKGROUND

On April 17, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor has operated a toy wholesaling store at 101 West 27th Street, 1st Floor, New York, New York 10001 (the "Property") since 1999.

---

[1]    The Hearing was adjourned to April 25, 2024 (ECF Doc. #13).

(Shi Decl. ¶ 3.)  The Property was leased through a "Standard Form of Store Lease" and qualifies

as a nonresidential, commercial property.  (TRO Motion, Ex. A.)

On or about July 21, 2022, 101 West 27th Street Equities Inc. (the "Prior Landlord")

served a 30-Day Notice Terminating Commercial Month-to-Month Tenancy on the Debtor,

thereby terminating the tenancy on August 31, 2022.[2]  The Debtor continued and continues to

occupy the Property after the expiration of the lease's term.  Accordingly, on September 27,

2022, the Prior Landlord, brought a state court action (the "Holdover Proceeding") in the New

York County Civil Court-Landlord and Tenant Division (the "State Court") against the Debtor.[3]

On or about April 6, 2023, the Prior Landlord conveyed the Property to the Landlord and the

Landlord was substituted as the petitioner to continue litigating the Holdover Proceeding.[4]  On

November 2, 2023, the State Court found that there was no dispute that the Landlord was the

owner and landlord of the Property and approved the substitution.[5]

After the Prior Landlord initiated the Holdover Proceeding, the Debtor filed a pre-answer

motion to dismiss, which the State Court denied on March 1, 2023.[6]  Later, the State Court

scheduled a trial on January 4, 2024.[7]  However, before trial, the Debtor filed a summary

judgment motion on November 14, 2023,[8] which was denied by the State Court and a new trial

date was set for March 4, 2024 (the "SJ Decision").[9]  The Debtor then filed a proposed order to

show cause (the "OSC") and sought a stay of the trial pending an appeal of the SJ Decision.[10]

---

[2]       *See Nomad West 27th Street LLC et al. v. New Dragon Toy Wholesale, Inc*., Index No. LT-314724-22/NY
(N.Y. Cnty. Civ. Ct. 2022), ECF Doc #1.  [hereinafter "Holdover Proceeding"].
[3]       *Id.*, ECF Doc. #1.
[4]       *Id.*, ECF Doc. #18.
[5]       *Id.*, ECF Doc. #27.
[6]       *Id.*, ECF Doc. #15.
[7]       *Id.*, ECF Doc. #27.
[8]       *Id.*, ECF Doc. #29–33.
[9]       *Id.*, ECF Doc. #34.
[10]      *Id.*, ECF Docs. #36–43.

The State Court declined to sign the OSC and stated that the Debtor could request a stay in the

Appellate Division, First Judicial Department of the Supreme Court of New York ("Appellate

Term").[11]  Thereafter, the Debtor requested a stay from the Appellate Term pending an appeal of

the SJ Decision; however, the interim stay of the Holdover Proceeding was denied on February

29, 2024.[12]  Also, before the Appellate Term decision was published, the Debtor filed a second

order to show cause ("Second OSC") on February 28, 2024.[13]  The State Court granted the

Second OSC to a limited extent to adjudicate the stay relief request, but it ultimately struck the

provision staying the underlying Holdover Proceeding.[14]  Judge Rena Malik noted that the

temporary restraining order was denied because "the [Debtor] failed to articulate any harm or

irreparable injury."[15]  On March 4, 2024, the parties appeared in court at 9:30 a.m. and the State

Court denied the Second OSC.[16]  Later, when the parties re-appeared at 2:15 p.m. to proceed

with the scheduled trial, the Debtor's attorney left the courtroom and the State Court converted

the trial to an inquest.  (Landlord Opposition ¶¶ 24–26.)  Following the inquest, on March 11,

2024, the State Court entered a final decision and a final judgment of possession in favor of the

Landlord (together, the "Holdover Decision").[17]  Later, on March 17, 2024, the New York City

Marshal (the "Marshal") issued a warrant of eviction after trial not to be executed before March

21, 2024 pursuant to the Holdover Decision.[18]

On April 4, 2024, the Marshal served an eviction notice on the Debtor, noting that the

earliest date the eviction warrant could be executed was April 19, 2024.  (Shi Decl. ¶ 6.)  The

---

[11]    *Id.*, ECF Doc. #44.
[12]    *Nomad W. 27th St. LLC v. New Dragon Toy Wholesale, Inc.*, 2024 NY Slip Op 63245(U) (N.Y. App. Div. 2024). [hereinafter "Appellate Term Decision"].
[13]    Holdover Proceeding, *supra* note 2, ECF Docs. #45–50.
[14]    *Id.*, ECF Docs. #51–52.
[15]    *Id.*
[16]    *Id.*, ECF Doc. #57.
[17]    *Id.*, ECF Docs. # 58–59.
[18]    *Id.*, ECF Docs. # 62.

Landlord scheduled the eviction for April 24, 2024.  (Landlord Opposition ¶ 31.)  In response, the Debtor initiated the present bankruptcy proceedings.

### A.    Landlord Opposition to the Order to Show Cause

The Landlord Opposition argues that the Order to Show Cause should be denied in its entirety and the Debtor should not be granted relief under the TRO Motion.  (Landlord Opposition ¶ 3.)  The Landlord alleges that the Debtor's lease to the Property expired several years before it filed for relief under chapter 11.  (*Id.*)  The Landlord states that the Debtor has conceded that its month-to-month tenancy has been terminated, and the State Court has issued a final judgment affirming that the lease terminated on August 31, 2022.  (Landlord Opposition ¶¶ 38–39.)  Accordingly, the Landlord argues that the lease is not property of the Debtor's estate under section 541(b)(2), and there is no basis to stay the Landlord's eviction action under section 362(b)(10).  (Landlord Opposition ¶ 37.)  The Landlord further argues that the Debtor's reliance on caselaw interpreting and applying New York Real Property Action and Procedures Law ("RPAPL") §749(3) is misplaced because the Debtor's lease was not terminated by judicial action.  (Landlord Opposition ¶ 41.)  Instead, the Landlord points to cases where a debtor's lease had expired prepetition and courts excised such leases from the debtor's estate under sections 362(b)(10) and 541(b)(2).  *See, e.g.*, *In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000); *In re Truong*, 557 B.R. 326, 332 (Bankr. D.N.J. 2016); *In re Neville*, 118 B.R. 14, 18 (Bankr. E.D.N.Y. 1990); *In re Scarsdale Tires Inc.,* 47 B.R. 478, 480 (S.D.N.Y.1985).  Taken together, the Landlord concludes that there is "no basis in the bankruptcy code to stay [the] eviction."  (Landlord Opposition ¶ 43.)

## II.   LEGAL STANDARD

### A.   The Automatic Stay

The commencement of a bankruptcy case imposes an automatic stay on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ."  11 U.S.C. § 362(a)(3).

However, there are statutory exceptions to the automatic stay.  Notably, section 362(b)(10) specifies that the voluntary filing of a petition in bankruptcy *does not* establish a stay "of any act *by a lessor to the debtor* under a *lease of nonresidential real property* that *has terminated by the expiration of the stated term of the lease* before the commencement of or during a case under [Title 11] to obtain possession of such property . . . ."  11 U.S.C. § 362(b)(10) (emphasis added).  The legislative history of section 362(b)(10) also indicates that Congress intended to allow landlords to promptly proceed in state courts and reclaim possession of nonresidential lease property where such lease had expired prepetition.  *See* S. REP. NO. 98–65, 98th Congr., 1st Sess. 68 (1983).

Furthermore, Congress has clarified that while the debtor's estate includes "all legal or equitable interests of the debtor in property," it *does not* include "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before commencement of the case under [Title 11], and ceases to include any interest of the debtor as a lessee under a lease of nonresidential property at the expiration of the stated term of such lease during the case."  11 U.S.C. § 541(a)(1); *id.* § 541(b)(2).

6

**B.      New York Real Property Action and Procedures Law ("RPAPL")**

The state where real property is situated governs in a dispute involving such property.

*See Butner v. United States*, 440 U.S. 48, 55 (1979) (holding that "property interests are created

and defined by state law"); *see also In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992)

("Congress has generally left the determination of property rights in the assets of a bankrupt's

estate to state law."). RPAPL governs the property actions and procedures for property located

in New York.

The relevant language of the current version of RPAPL § 749(3) provides as follows:

> Nothing contained herein shall deprive the court of the power to stay or vacate such
> warrant for good cause shown prior to the execution thereof, or to restore the tenant
> to possession subsequent to execution of the warrant. In a judgment for non-
> payment of rent, the court shall vacate a warrant upon tender or deposit with the
> court of the full rent due at any time prior to its execution, unless the petitioner
> establishes that the tenant withheld the rent due in bad faith.

N.Y. REAL PROP. ACTS. LAW § 749(3) (McKinney 2022).

Before June 14, 2019, RPAPL § 749(3), in relevant part, stated:

> The *issuing of a warrant for the removal of a tenant cancels the agreement* under
> which the person removed held the premises, and *annuls the relation of landlord
> and tenant*, but nothing contained herein shall deprive the court of the power to
> vacate such warrant for good cause shown prior to the execution thereof.

N.Y. REAL PROP. ACTS. LAW § 749(3) (McKinney 2018) (emphasis added).

**C.      Preliminary Injunction**

1.      Injunctions Pursuant to Bankruptcy Rule 7065

A party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil

Procedure must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits

or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation

and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

7

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d

Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.

1979). The traditional standards for issuance of an injunction pursuant to Rule 65 are made

applicable to adversary proceedings by Bankruptcy Rule 7065. *See Eastern Air Lines v.

Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990).

2.      Injunctions Pursuant to Section 105(a) of the Bankruptcy Code

Additionally, "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title" pursuant to section 105(a) of the Bankruptcy

Code. 11 U.S.C. § 105(a). The Second Circuit has held that there is statutory authority under 11

U.S.C. § 105(a) to enjoin the pursuit by creditors of actions that a bankruptcy estate has the

exclusive right to pursue. *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d

81, 93 (2d Cir. 2014). To the extent that the irreparable harm requirement has not been deemed

satisfied in these cases, such cases have held the requirement to be unnecessary. *See Secs. Inv.

Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 429 B.R. 423, 436 (Bankr. S.D.N.Y. 2010)

("Because injunctions under section 105(a) are authorized by statute, they need not comply with

the traditional requirements of Rule 65."); *McHale v. Alvarez (In re The 1031 Tax Group, LLC)*,

397 B.R. 670, 674 (Bankr. S.D.N.Y. 2008) ("Rather, 'the bankruptcy court may enjoin

proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its

jurisdiction with respect to a case before it.'") (quoting *Johns-Manville Corp. v. Colo. Ins. Guar.

Ass'n (In re Johns-Manville Corp.)*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1994)).

### III.   DISCUSSION

In the TRO Motion, the Debtor has failed to show that it is entitled to a preliminary

injunction.  The State Court's final judgment that the Debtor's lease terminated prepetition on

August 31, 2022 is entitled preclusive effect in this bankruptcy case.[19]  This judgment establishes

that the lease is not property of the estate and is not protected by the automatic stay.

This is unlike many non-payment proceedings where a state court enters judgment based

on rental arrears and issues a warrant of eviction permitting the landlord to regain possession of

the property.  In such cases, RPAPL § 749(3) permits the warrant to be vacated and the tenant to

retain possession of the premises.  Not so here, where the issue was whether the lease terminated

in August 2022.

Accordingly, the Debtor cannot show a likelihood of success on the merits.  Since there is

no leasehold interest to protect, the Court will not discuss the irreparable harm and balance of

equities factors that are otherwise relevant to preliminary injunctive relief.

#### A.   Likelihood of Success on the Merits

The first issue is whether the Debtor has shown that it is likely to succeed on the merits,

or as applied here, whether the automatic stay afforded by section 362 of the Bankruptcy Code

applies to the Property.  The Debtor frames the issue as a straightforward application of section

362 and relies on the broad coverage provided under the provision to argue it is likely to succeed

on the merits.  (Shi Decl. ¶¶ 9–10.)  The Debtor posits that under RPAPL 749(3), the judgment

of possession in favor of the Landlord and the warrant of eviction do not terminate its

nonresidential lease on the Property.  (TRO Motion ¶¶ 11–15.)  Thus, the Debtor concludes that

its "possessory interest" is entitled to automatic stay protection.  (Shi Decl. ¶ 15.)  This analysis

---

[19]     Holdover Proceeding, *supra* note 2, ECF Doc. #58.

is inaccurate and disregards final decisions that the State Court has made with respect to the

Property.

The Debtor fails to engage the statutory exception to the automatic stay provided by

section 362(b)(10), which is directly on point.  Section 362(b)(10) states that an action by a

lessor on the debtor involving (1) a lease of a nonresidential real property that has (2) terminated

by the expiration of the stated term of the lease before the bankruptcy proceeding is not stayed.

11 U.S.C. § 362(b)(10).  Section 362(b)(10) is dispositive on the issue in the Landlord's favor.

1.    Nonresidential Property

There is no dispute that the Property is a nonresidential, commercial property.  The issue

was not contested in the Holdover Proceeding.  And the Debtor has conceded that it has been

"operating a toy wholesaling store at the Premises for over 25 years."  (Shi Decl. ¶ 3.)

Accordingly, the Property falls under the category of real property that is covered by section

362(b)(10).

2.    Termination of the Nonresidential Lease Prior to the Bankruptcy Filing

The Debtor focuses on the warrant of eviction as the basis of termination for its lease and

states RPAPL § 749(3) protects its interest in the Property.  However, the State Court has

considered this point extensively and ruled that the Debtor's lease was lawfully terminated

before the warrant was issued.  In the Holdover Proceeding, the Landlord successfully proved

that the lease was terminated on August 31, 2022, and the Debtor's repeated arguments to the

contrary have been rejected by the State Court and the Appellate Term.

Specifically, the Debtor has argued that when the Landlord substituted for the Prior

Landlord, it sent a 5-day notice of past due rent for April–July 2023 and this demand reinstated

and reaffirmed the Debtor's tenancy.[20]  The State Court determined that even though the

Landlord "demanded rent after it commenced the [Holdover Proceeding]" it did not take actions

"in furtherance of that demand."[21]  As a result, "albeit confusing," the Landlord's demand did

not "vitiate the [Holdover Proceeding]" or re-establish tenancy after the August 31, 2022

termination date.[22]

> The State Court's ruling on the termination date for the lease on the Property is clear.

The State Court held that:

> [Landlord] established that it is entitled to a final judgment of possession against
> [Debtor].   [Landlord] established that it is the owner of the [Property]; *that
> [Debtor's] month-to-month tenancy terminated on August 31, 2022; that [Debtor]
> was properly served with the notice of termination*, notice of petition and petition;
> *that [Debtor] continues in possession of the premises without permission of the
> [Landlord] after the termination of the month-to-month tenancy*; and that
> *[Landlord] did not receive or accept any rent from respondent after the tenancy
> was terminated.*[23]

> Accordingly, the Debtor's possessory interest in the Property definitively terminated on

August 31, 2022, and its remaining "naked possessory interest" is not afforded protection under

the Bankruptcy Code.  *See, e.g.*, *In re Neville*, 118 B.R. at 18 ("*The Debtor's naked possessory

interest, if any, has no value to this Debtor's estate*, and to reimpose a stay against the Landlord

would not benefit this Debtor's estate.  *Once a lease has been terminated, the Bankruptcy Court

does not have the power to revive it even through its equitable powers*.") (emphasis added);

*Radol v. Centeno*, 165 Misc. 2d 448, 452 (Civ. Ct. 1995) ("It is settled law that a lease or license

that was terminated before the filing of a bankruptcy petition is neither affected by the automatic

---

[20]     Holdover Proceeding, *supra* note 1, ECF Doc. #34; *see also id.*  ECF Doc. #30; *id.* ECF Doc. #37.
[21]     Holdover Proceeding, *supra* note 1, ECF Doc. #34.
[22]     *Id.*
[23]     *Id.*, ECF Doc. #58 (emphasis added).

stay under 11 U.S.C. § 362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365.")
(citations omitted).

Moreover, the cases the Debtor has cited in support of its position are inapposite. In *P.J. Clarke's Restaurant Corp.*, the bankruptcy court found that the Debtor had a protectable possessory interest in an expired lease, but it noted that a warrant of eviction had not been issued at the time of the filing, a final judgment had not been entered, and the Debtor still had a chance to appeal and "reinstate" the lease in state court. *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 398 (Bankr. S.D.N.Y. 2001). And if the debtor could reinstate the lease through a successful appeal, "[it] would still have 11 years to run, and the *Debtor ha[d] far greater rights than a holdover with merely a naked right of possession and nothing more.*" *Id.* (emphasis added). Here, the exact opposite is true: a warrant of eviction has been issued, a final judgment has been entered, and the month-to-month tenancy has been terminated. Accordingly, the Debtor is more similar to the holdover tenant that the opinion draws a comparison against. Furthermore, as this Court noted, *P.J. Clarke's* holds "only that a lease may be considered to be unexpired for purposes of performing postpetition obligations pursuant to section 365(d)(3) if it was terminated prior to the petition but could be reinstated under state law," it does not hold that such a lease "is considered unexpired for all other purposes under the Bankruptcy Code, or that a bankruptcy court may reinstate the terminated leasehold." *In re Sweet N Sour 7th Ave. Corp.*, 431 B.R. 63, 68 (Bankr. S.D.N.Y. 2010).

Similarly, while the Second Circuit noted in *Steakhouse* that a "mere possessory interest in real property, without any accompanying legal interest is sufficient to trigger the protection of the automatic stay," it did so in a materially different context. *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987). In *Steakhouse*, the Second Circuit considered whether a

12

sublease that had several years remaining on the lease when the landlord attempted to accelerate

the net lease was property of the bankrupt subtenant's estate. *Id.* at 428. The facts and analysis

of *Steakhouse* are not relevant to section 362(b)(10) and its application to the Debtor.

Accordingly, these cases are inapplicable to the Debtor's facts and posture.

Instead, *In re Portofindough LLC*, 655 B.R. 694 (Bankr. S.D.N.Y. 2023), is instructive

here. In *Portofindough,* the debtor-tenant signed a commercial lease with the landlord on July 1,

2021. *Id*. at 695. On March 15, 2022, a contractor hired by the debtor-tenant filed a mechanic's

lien against the leased property, in violation of the lease agreement. *Id.* On July 12, 2023, the

landlord notified the debtor-tenant that it had defaulted on the lease by causing the mechanic's

lien to be filed against the property. *Id.* at 696. Later, on August 2, 2023, the landlord sent a

lease termination notice to the debtor-tenant effective on August 11, 2023, and commenced an

eviction action on August 16, 2023. *Id.* Thereafter, on October 24, 2023, the debtor-tenant filed

for relief under chapter 11 and the eviction action was stayed. *Id.* As relevant here and among

other theories of relief, the landlord argued that the automatic stay should not apply to the lease

because it was terminated prepetition. *Id.* This Court agreed with the landlord.

Specifically, the Court found that the lease contained a conditional limitation that caused

the lease to terminate automatically "after the [l]andlord served the [d]ebtor with (a) the fifteen

(15) day notice of default and (b) the five (5) day notice of termination of [l]ease." *Id.* at 700.

The landlord had sent both notices necessary to effectuate a termination under lease in a timely

manner to the debtor-tenant. Pursuant to the terms of the lease, the Court held that the debtor-

tenant's tenancy had terminated prepetition "within the meaning of section 362(b)(10)," and

"termination of the [l]ease foreclosed the [debtor-tenant's] leasehold interest in the [p]remises

without further action." *Id.*  Accordingly, the Court allowed the landlord to proceed with its state court eviction action.

The facts of the Debtor's case, like *Portofindough*, fall squarely under the exception to the automatic stay afforded by 362(b)(10).  For the Court to accept the Debtor's position that its naked possessory interest (the Debtor claims it has a "possessory" or "equitable possessory" interest, but both characterizations are inaccurate) should be protected by the automatic stay would effectively read section 362(b)(10) out of the Bankruptcy Code, which was purposefully enacted to respond to these situations.  As a result, the Debtor's expired commercial lease is not protected by the automatic stay and the Landlord may execute the eviction warrant.

**B.**     **Preclusive Effect of the State Court's Holdover Decision**

On March 11, 2024, the State Court entered the Holdover Decision fixing the termination date of the Debtor's lease as August 31, 2022.  The State Court's judgment is entitled to preclusive effect in the bankruptcy context.  In *Allen v. McCurry*, the Supreme Court stated that "Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738 (1982)).  This Court, like other bankruptcy courts, falls under the Congressional mandate and it must give preclusive effect to the Holdover Decision to the same extent a New York court would.  *See Matter of Farrell*, 27 B.R. 241, 243 (Bankr. E.D.N.Y. 1982) ("It is clear that the bankruptcy court by virtue of 28 U.S.C. Section 1738 is to give full faith and credit to a prior final state court judgment in the

14

same manner as would the court in that state pursuant to the Full Faith and Credit Clause of the

Constitution.") (citation omitted). [24]

Accordingly, the Court may not undertake an independent review of issues on which the

State Court has entered a final judgment.  *See, e.g.*, *In re Neville*, 118 B.R. at 17 ("A judgment of

the State Court has preclusive effect in the bankruptcy context, and therefore, a Bankruptcy

Court should not undertake an independent review of the issues previously decided in the State

Court."); *In re P.J. Clarke's Rest. Corp.*, 265 B.R. at 403 ("The law is clear that the Bankruptcy

Code does not permit a debtor to re-litigate an issue already determined in State court . . . .").

Here, the State Court has entered the Holdover Decision following extensive litigation of

the underlying issues.  The Debtor has been active throughout the Holdover Proceeding and filed

motions, an appeal, and several orders to show cause.  The Debtor has even sought a stay

pending appeal of the SJ Decision from the Appellate Term, but the stay was denied, and the

Appellate Term allowed the Holdover Proceeding to proceed to final judgment.[25]  This Court

will not disturb the Holdover Decision and relitigate the termination date.  And, in any event, the

Court has no power, equitable or otherwise, to revive a terminated lease in bankruptcy.  *See In re*

*Neville,* 118 B.R. at 18.

---

[24]   It would not matter if the state court judgment is still subject to appeal.  The trial court judgment is
entitled to preclusive effect even if an appeal is filed.  Here, the Appellate Term refused to stay the judgment.

> The rule in New York, unlike that in other jurisdictions, is that the mere pendency of an appeal does
> not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that
> judgment in a second proceeding (see *Parkhurst v. Berdell*, 110 N.Y. 386, 392–393, 18 N.E. 123;
> *Sullivan v. Ringler & Co.*, 69 App. Div. 388, 74 N.Y.S. 978; *Mercantile Nat. Bank of City of N. Y.*
> *v. Corn Exchange Bank*, 73 Hun. 78, 80, 25 N.Y.S. 1068; *Stevens v. Stevens*, 69 Hun. 332, 336, 23
> N.Y.S. 520; *Duverney v. State of New York*, 96 Misc.2d 898, 410 N.Y.S.2d 237; *Matter of Moran*,
> 59 Misc. 133, 112 N.Y.S. 207; Ann., 9 A.L.R.2d 984, 1001; 9 Carmody-Wait 2d, N.Y. Prac.,
> § 63:215, pp. 222–223).

*Matter of Amica Mut. Ins. Co.*, 445 N.Y.S.2d 820, 822 (N.Y. App. Div 1981).

[25]   *See* Appellate Term Decision, *supra* note 12.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** the relief requested in the TRO Motion.

**IT IS SO ORDERED.**

Dated:    April 26, 2024
          New York, New York

_Martin Glenn_

MARTIN GLENN
Chief United States Bankruptcy Judge